O’NIELL, J.
The plaintiff in each of these consolidated cases sued separately to have an assessment annulled, or, in the alternative, to have it reduced. Each plaintiff alleged that the assessment was of a certain quantity of mineral oil at 60 cents a barrel and that it was an illegal assessment, for the following reasons, viz.:
That plaintiff furnished the assessor a true and correct sworn statement of the value of all of the property owned by plaintiff in the parish of Red River before the 1st of April, 1916, as required by section 14 of Act No. 170-of 1898, as amended by section 3 of Act 'No. 182 of 1906; that the assessor received the statement without protest or objection, filed it as a part of his records, and, having completed the assessment of all property in the parish, gave public notice, in May, 1916, that the assessment rolls for the year were complete and open to public inspection; that plaintiff’s property was then assessed ■according to the sworn statement and at a true and correct valuation; that the police jury met as a board of reviewers on the 5th of June, 1916, for the purpose of correcting and approving the assessments for the year, and, as the board did not then change or alter the assessment of the plaintiff’s property, the same was, in effect, approved and made final. It is alleged that the police jury again met on the 11th of July, 1916, without notice to plaintiff, and, pretending to act as a board of reviewers, added to the property assessed to plaintiff (or approved what the assessor had added) an assessment of a certain quantity of mineral oil at 60 cents a barrel.
The Palmer Company alleged that the additional assessment to the company was of 331,178 barrels of oil assessed at $198,712 (should be $198,706). E. T. Robinson alleged that the additional assessment to him was of 331,835 barrels of oil assessed at $199,101. Zach K. Brinkerhoff alleged that the additional assessment to him was of 264,448 barrels of oil assessed at $158,668. Each plaintiff alleged that he was informed and believed that the assessor had added the supposed value of the oil to the value of the land from which the oil was produced, and had thereby increased the assessment of the land. Each plaintiff alleged that the mineral oil in the land had been disposed of by a mineral lease before the year 1916, that the plaintiff received as royalty only a portion of the oil produced, and that the oil on which the additional assessment was based was not reduced to possession before the 1st of January, 1916, and was therefore not subject to assessment for the taxes of that year.
Before answering the petition the defendants, the police jury, the assessor, and tax collector filed a plea of estoppel in each suit, alleging that the plaintiff had failed and neglected to give the assessor before the 1st of April, 1916, a list of his property, and make oath to its correctness, and that, by the terms of section 14 of Act No. 170 of 1S9S, as amended by section 3 of Act No. 182 of 1906, the plaintiff was, by such failure or neglect, estopped from contesting the correctness of the assessment list filed by the assessor.
The plea of estoppel was referred to the merits; and, reserving the benefit of the plea, the defendants filed an answer in each suit. They again denied that the plaintiff had filed a sworn statement before the 1st of April, 1916, and denied that the assessmmt rolls were complete when the police jury *1079 met as a board of reviewers, on the 5th of June, 1916, or that the value of plaintiff’s property then appeared on the assessment rolls. The defendants alleged that the assessor had been unable to procure the information necessary to ascertain the enhanced value of the plaintiff’s land resulting from the production of mineral oil, and that therefore the board of reviewers adjourned their meeting until the 11th of July, 1916, to enable the assessor to get the information necessary to complete the assessment. They alleged that the assessment approved by the board of reviewers on the 11th of July, 1916, was not an assessment of the oil produced, but an assessment of the land that had produced it, that the quantity of oil produced was only considered as a basis for computing or estimating the value of the land, and that the assessment of the land was at a fair valuation and valid in every respect.
The defendants prayed that the plaintiff’s demand be rejected, and that plaintiff be condemned to pay the attorney’s fee of 10 per cent, on the taxes for the year 1916, as stipulated in section 56 of the Act No. 170 of 1898. Judgment was rendered accordingly, and the plaintiff in each suit appealed.
[1, 2] The plaintiff Brinkerhoff filed the statement required by section 3 of Act No.. 182 of 1906 after the 1st of April, 1916. It appears also that, although the plaintiff Robinson filed his statement before the 1st of April, he did not make oath to .its correctness. The filing of the statement after the 1st of April or filing it without the oath required was a failure to comply with the requirement of section 3 of Act No. 182 of 1906. The plaintiffs Brinkerhoff and Robinson were therefore estopped from contesting the correctness of the assessment list filed by the assessor. However, our observations and conclusion regarding the suit of the Palmer Company is equally applicable to the suit of Brinkerhoff and of Robinson.
The lands of all three plaintiffs were producing large quantities of oil in the latter part of the year 1915 and at the beginning of the year 1916. They were of very little value as agricultural lands, but were of enormous value for the royalties which the owners were receiving. In the statement furnished to the assessor each of the plaintiffs stated the value of his land for agricultural purposes only, estimating the lands at $2.50 to $10 an acre. The assessor knew or believed that the lands were producing oil, and therefore would not assess them at the values stated by the owners. When the police jury met as a board of reviewers on the 5th of June, 1916, he declared that he had not yet obtained sufficient information regarding the mineral value of these lands and was unwilling to assess them only for their agricultural value. ■ Thereupon, either at the request of the assessor or on suggestion of one of the police jurors, the meeting of the board of reviewers adjourned subject to call, in order to give the assessor further time to obtain definite information as to the mineral valqe of these lands. The assessor thereafter learned from the secretary of the conservation commission the quantity of oil produced from the land of each of the plaintiffs during the first quarter of the year 1916, and, taking that as a basis for his calculation, added to the agricultural value the mineral value of each tract of land. His method was to add 60 cents value for every barrel of oil produced during the first quarter of the year. But he did not assess the oil to the plaintiffs. He merely added the mineral value to the agricultural value of the land; and it is not contended by the plaintiffs that the method employed by the assessor was unfair or inequitable.
[3] Even if the plaintiffs should not be held estopped (by furnishing the assessor what was not a bona fide statement of the value of their lands) from contesting an excessive assessment, we think they were estopped from *1081 complaining that the board of supervisors had to adjourn the meeting of the 5th of June, to allow the assessor an opportunity to obtain information which the plaintiffs should have furnished. The plaintiffs do not contend that their lands were worth less than the amount of the assessments, and the evidence shows they were worth much more.
The appellants contend that the judgments condemning them to pay attorney’s fees are erroneous: First, because the suits were not defended by an attorney appointed by the Governor to represent the tax collector; and, second, because these are not suits for the reduction of assessments, but suits to annul assessments.
[4] Section 56 of Act No. 170 of 1898 provides that the attorney at law who represents the tax collector in a proceeding for the reduction of an assessment or for the collection of taxes (excepting license taxes), or in an injunction proceeding to restrain the tax collector from collecting taxes, shall receive as compensation 10 per cent, on the amount collected, calculated upon the total amount of taxes and penalties so collected as a. result of the aforesaid proceedings. That clearly applies to any attorney at law who represents the tax collector in such proceedings. These were suits for the reduction of the assessments of the plaintiffs’ lands to the extent of the mineral value put upon them by the assessor; and the plaintiffs could not change the nature of the suits by alleging that the additional value put on the land was an assessment of the mineral oil itself. Our conclusion is that the plaintiffs are liable for the penalties. See State ex rel. Stempel v. City of New Orleans, 105 La. 768, 30 South. 97; Methodist Episcopal Church v. City of New Orleans, 107 La. 611, 32 South. 101; Sibley, L. B. & S. Railway v. Currie, Tax Collector, 137 La. 713, 69 South. 148. As the plaintiffs did not tender or offer to pay any taxes on their land, they were properly condemned to pay 10 per cent, on all the taxes assessed on their land..
The judgments appealed from are affirmed.